107  251
112  212

PEOPLE *v.* RESH.

1. CRIMINAL LAW—WITNESSES—DUTY OF PROSECUTION—HARMLESS ERROR.

The refusal of the prosecution to produce a witness whose name was indorsed upon the information is not ground for a reversal, where the respondent himself afterwards placed the witness upon the stand, and obtained the benefit of his testimony.

2. SAME.

The prosecution is not obliged to call a witness whose name was placed upon the information at the request of the respondent, such witness being present in court.

3. SAME—ACCOMPLICE IN CRIME.

It is not obligatory upon the prosecution to call an accomplice of the respondent as a witness, under the rule requiring the production of eye-witnesses of the transaction.

4. SAME—ASSAULT—INTENT—INSTRUCTIONS TO JURY.

Where, in a prosecution for an assault with intent to do great bodily harm less than murder, it appears that the assault, which resulted in serious injury, was unprovoked and deliberate, an instruction that a man is presumed to intend the natural consequences of his own acts is proper.

5. SAME—ALIBI—INSTRUCTIONS.

Where the respondent interposes an *alibi*, it is proper for the court to direct the attention of the jury to the nature of such defense, and to instruct them that all of the evidence bearing thereon should be carefully considered, "and if, in view of the evidence, the jury have any reasonable doubt as to whether the defendant was at some other place at the time the crime was committed, they should give the defendant the benefit of any doubt, and find him not guilty."

6. SAME—RESPONDENT AS A WITNESS—INSTRUCTIONS AS TO CREDIBILITY.

It is not error to instruct the jury in a criminal case that, in weighing the testimony of the respondent, they may consider his relation to the offense charged.

7. SAME—PRESUMPTION OF INNOCENCE—INSTRUCTIONS.

An instruction that the presumption of innocence continues to surround the respondent until removed by evidence con-

vincing the jury, beyond a reasonable doubt, of his guilt of the offense charged in the information, "or any other offense," is not reversible error, where there is no evidence of the commission of any offense other than that set forth in the information.

Error to superior court of Grand Rapids; Burlingame, J. Submitted November 21, 1895. Decided December 3, 1895.

Frederick Resh was convicted of an assault with intent to do great bodily harm, less than the crime of murder, and sentenced to imprisonment in the state house of correction and reformatory at Ionia for four years. Judgment affirmed.

*Nathan P. Allen*, for appellant.

*Fred A. Maynard*, Attorney General, and *Alfred Wolcott*, Prosecuting Attorney, for the people.

GRANT, J. The respondent was convicted of an assault upon one Edward L. Wagner, with intent to do great bodily harm, less than murder.

1. The first alleged error is that the court did not require the people to produce a witness whose name was indorsed upon the information. There are two complete answers to this: (1) The witness was in court, and was called as a witness by the respondent, who had the benefit of his testimony. (2) His name was placed upon the information at the request of the respondent.

The testimony of the people disclosed that another man was with the respondent at the time of the assault. The contention is that this witness was that man; that he was an eye-witness to the transaction; and that it was therefore the duty of the prosecutor to call him, under the following decisions: *Maher* v. *People*, 10 Mich. 225; *Hurd* v. *People*, 25 Mich. 415; *Thomas* v. *People*, 39 Mich. 312; *People* v. *Davis*, 52 Mich. 573; *People* v. *Swetland*, 77

Mich. 57; *People* v. *Deitz*, 86 Mich. 422. The assault was premeditated; was made in the night, with some blunt instrument; and, as soon as the cowardly blow was struck, the respondent and his companion ran away, and escaped in the darkness. The above decisions do not hold, nor is there any reason or common sense in holding, that the people should call as a witness an accomplice in crime.

2. Upon the question of intent, the court instructed the jury as follows:

"In this case the intent must be derived from the evidence of the deed committed, in connection with the other evidence in the case; and it is for you to say from the evidence in the case whether or not an intent existed in the mind of the respondent, at the time of the commission of the alleged offense, to commit upon the person of the injured man great bodily harm, less than the crime of murder, or whether he committed a simple assault and battery, or whether he is guilty of any offense at all.

"The extent of the injury inflicted, no matter how severe or disproportionate to the provocation, if there was any provocation, will not take the case out of that of assault and battery, unless you find the existence of the intent to do great bodily harm, less than the crime of murder. But the severity and aggravated character of the assault, and extent of the injury received, as well as the weapon with which it was committed, may be considered by you, in connection with other evidence in the case, in your endeavor to find from the evidence whether or not such intent stimulated the respondent's action.

"If, from the evidence, you find that the respondent struck the complainant with a dangerous and offensive weapon, and that the result was serious bodily harm to the complaining witness, less than the crime of murder, you may take all these facts into consideration in determining whether or not the respondent intended to do great bodily harm, less than the crime of murder, at the time he committed the assault, if he committed an assault at all.

"In this case the intent is the gist of the offense charged in the information, and the law usually pre-

sumes that a person intends the natural result of his own acts. And this rule applies in this case, with the usual conditions that if the circumstances and surroundings of the case shown by the evidence establish the fact that there was no intention to do what was done, in the way of inflicting the injury, or leave in your mind a reasonable doubt of such intent, then your duty is to acquit the respondent of the offense charged in the information."

Counsel in his brief says: "We submit that there is no evidence in the case to warrant the language used by the court in his charge as to intent."

The blow was struck so suddenly that Mr. Wagner did not see his assailant. He was rendered insensible; his nose was broken; several of his teeth were loosened; his right eye was closed for three days; and he was treated by a physician for from four to six weeks. The physician testified that "the nose was flattened on the left side of the face. It was lying on the left side of the face.  *  *  * The bone of the nose was broken, and the cartilage also." This was not a sudden affray, nor the use of a stone or other weapon in a fit of sudden anger. No provocation for the assault was shown. The act was done with deliberation, and was a case for the application of the rule that one will be presumed to intend the natural consequences of his act. There was, however, other testimony tending to show the intent, and the jury were carefully instructed to consider it all in determining whether respondent entertained the intent charged.

3. Complaint is made of the following instruction:

"One of the defenses interposed by the defendant in this case is what is known in law as an 'alibi,'—that is, that the defendant was at another place at the time of the commission of the crime; and I instruct you that such a defense is as proper and as legitimate, if proven, as any other. And all the evidence bearing upon that point should be carefully considered by the jury. And if, in view of the evidence, the jury have any reasonable doubt as to whether the defendant was at some other place at

the time the crime was committed, they should give the defendant the benefit of any doubt, and find him not guilty. The defendant is not required to prove that defense beyond a reasonable doubt to entitle him to an acquittal. It is sufficient if the evidence upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged."

It requires no discussion to show the correctness of this instruction. The respondent relies on *People* v. *Pearsall*, 50 Mich. 233; but the instruction there given is in no respect similar to the instruction in this case.

4. Complaint is also made of the following instruction:

"The respondent has been a witness before you, as he had a right to be; and you have a right to weigh his testimony, and give it such credit as you believe it fairly entitled to. You have a right to take into consideration, in weighing the testimony, his relation to the offense charged in the information."

We find no error in this instruction. *Housh* v. *State*, 43 Neb. 163; *St. Louis* v. *State*, 8 Neb. 405; *Murphy* v. *State*, 15 Neb. 383.

5. The court gave the usual instruction upon the presumption of innocence, and added:

"That presumption continues to surround him until removed by evidence that satisfies your minds, and beyond a reasonable doubt, of his guilt of the offense charged in the information, or any other offense."

It is gravely insisted that the use of the term "any other offense" left it to the jury to find the respondent guilty of some other offense than the one for which he was on trial. The information contained only one count, alleging the major offense. Assault, and assault and battery, were also involved, and upon these the court had correctly instructed the jury. If the expression meant anything more than to state a rule of general application, it would naturally direct the attention of the jury to the minor offense of assault and battery. It would, in any event, be absurd to hold that the jury were

prejudiced by such a remark, or that they found him guilty of some offense not set forth in the information, and of which there was not a scintilla of proof.

Judgment affirmed.

The other Justices concurred.